940 F.2d 662
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Hazel SHEPARD, Individually and as both Conservator and
Guardian of Donald J. Shepard, Donald Shepard,
Plaintiffs-Appellees,
v.
The HORSBURG AND SCOTT COMPANY, an Ohio corporation, et al.,
Defendants,
Swindell-Dressler Company, Pullman Incorporated, Pullman,
Inc., the MW Kellogg Company, Henley/MWK Holding, Inc., Kell
Holding Corporation, the Henley Group, Inc.,
Defendants/Third-Party Plaintiffs-Appellants,
Davey McKee Equipment Corporation, Third-Party Defendant-Appellee.
 No. 90-1272.
 United States Court of Appeals, Sixth Circuit.
 Aug. 2, 1991.
Opinion Modified on Grant of Rehearing and Reconsideration
Oct. 10, 1991.
 
 Before RYAN and ALAN E. NORRIS, Circuit Judges and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a products liability case filed by Hazel Shepard, individually, and as both conservator and guardian of her husband, Donald J. Shepard, as the result of injuries he sustained at work on May 3, 1986, when a piece broke off an electric arc furnace manufactured in the late 1960s by The M.W. Kellogg Company, under the name of Swindell Furnace Group (SFG). Davey McKee Equipment Corporation acquired the business and assets from Kellogg in September 1981.
 
 
 2
 The purchase agreement between Kellogg[1] and McKee included these provisions:
 
 
 3
 11.01 Assumption of Liabilities.
 
 
 4
 Buyer agrees to assume the following liabilities, and no other, of Seller with respect to the business and Assets of SFG:
 
 
 5
 .............................................................
 
 
 6
 ...................
 
 
 7
 * * *
 
 
 8
 (iv) Any other liabilities related to the Assets and not expressly retained by Seller.
 
 
 9
 11.02 Liabilities Retained by Seller.
 
 
 10
 Seller shall continue to be responsible for (a) all liabilities with respect to or related to all contracts except those contracts specified in Section 1.02(a)(6), (b) all torts, infringements, obligations, acts, omissions, or claims related in any way to business operations of SFG, Seller or its Affiliates conducted before April 30, 1981, whether asserted, accrued, or matured before or after Closing Date, including liabilities for local, state or federal corporate income, franchise or similar taxes of Seller and for any social security, unemployment, workmen's compensation or other charges related to payroll ... (d) any liability arising from physical injury or damage to person or property where the accident event, occurrence, or injury on which liability is based occurred prior to the Closing Date....
 
 
 11
 Kellogg argued that, under a fair reading of section 11.02(d), McKee assumed responsibility for after-sale personal injury liabilities.
 
 
 12
 The district court awarded summary judgment to McKee, holding that, under the clear language of the agreement, it did not assume any contractual obligation for product liability claims arising out of acts performed by Kellogg years before the date of the sale. The district court rejected Kellogg's argument as unreasonable and believed that such an interpretation "would be suicidal" and "would be an act of self-immolation" by McKee.
 
 
 13
 The general rule under New York law, which the parties agree governs, is that a buyer does not become responsible for the seller's liabilities by reason of the purchase. Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 244-45, 451 N.E.2d 195, 198, 464 N.Y.S.2d 437, 440 (1983). This general rule can be circumvented if the acquisition agreement reveals an express or implied assumption of tort liability. Hartford Acc. & Ind. Co. v. Canron, Inc., 43 N.Y.2d 823, 825, 373 N.E.2d 364, 402 N.Y.S.2d 565 (1977). However, this exception is subject to careful judicial scrutiny because the law frowns upon contracts intended to exculpate parties from the consequences of their own negligence. Gross v. Sweet, 49 N.Y.2d 102, 108, 400 N.E.2d 306, 424 N.Y.S.2d 365 (1979).
 
 
 14
 Plaintiffs' cause of action is based upon the design or manufacture of a furnace in the 1960s by Kellogg, prior to McKee's purchase of the company in 1981. Accordingly, Kellogg would be liable for the conduct complained of by plaintiffs, in the absence of an unequivocal agreement by McKee to assume that liability.
 
 
 15
 Section 11.02(b) of the agreement, standing alone, indicates Kellogg retained liability. Division (d) would not appear to be inconsistent if one regards its operative language as "any liability arising from physical injury ... where the ... event, [or] occurrence ... on which liability is based occurred prior to the Closing Date," since plaintiffs' claim is based upon design or manufacture. However, Kellogg says the operative language in division (d) is "injury on which liability is based occurred prior to the Closing Date" because the injury is what plaintiffs' claim is based upon. Since the injury occurred after closing, McKee would be liable because, under section 11.01(iv), it agreed to assume "liabilities related to the Assets and not expressly retained by Seller." These two provisions of the agreement furnish sufficiently specific language, contends Kellogg, to overcome the "general" language of division (b).
 
 
 16
 At best, Kellogg has pointed to some wording in the agreement which, if read in a particular way, can be said to be confusing and which, when viewed in that manner and in isolation, conceivably might be construed as an assumption of liability by McKee. However, viewing the contractual language as a whole, we are unable to say that it "evinces the unmistakeable intent" of McKee to assume liability for Kellogg's conduct.
 
 
 17
 The judgment of the district court is therefore affirmed.
 
 ORDER
 
 18
 (Oct. 10, 1991)
 
 
 19
 Third-party plaintiffs-appellants petition for rehearing and seek reconsideration of the per curiam opinion of the court filed on August 2, 1991.
 
 
 20
 Upon consideration, we conclude that our opinion should be modified in certain respects, and to that extent the motion is granted.
 
 
 21
 It is therefore ORDERED that the attached opinion is substituted for the one filed on August 2, 1991.* In all other respects, the mandate and judgment of this court of that date remain unchanged.
 
 
 
 *
 The modifications have been incorporated into this opinion
 
 
 [1]
 All of the third-party plaintiffs are either actual successors, affiliates, or subsidiaries of the M.W. Kellogg Company